UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED

SEP 18 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA )
)
v. )
)
MARCIN CIBOROWSKI, )
   also known as "Rafal Golaszewski," )
   "Seba," and "Sebastian," )
MARIUSZ DANILUK, )
   also known as "Karol," and )
MATEUSZ DZIELSKI )
   also known as "Mati" )

No. 20 CR 216

Violation: Title 18, United States
Code, Section 371

JUDGE KENNELLY
MAGISTRATE JUDGE CUMMINGS

The SPECIAL JULY 2018 GRAND JURY charges:

1.     At times material to this indictment:

     a.     Defendant MARCIN CIBOROWSKI, also known as "Rafal Golaszewski," "Seba," and "Sebastian," was a citizen of Poland.

     b.     Defendant MARIUSZ DANILUK, also known as "Karol," was a citizen of Poland.

     c.     Defendant MATEUSZ DZIELSKI was a citizen of Poland.

     d.     Individuals A, B, and C were citizens of Poland.

     e.     Defendant MARCIN CIBOROWSKI controlled an apartment located on Perrie Drive in Elk Grove Village, Illinois ("the Elk Grove Location"). Defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI also had access to the Elk Grove Location.

     f.     Defendant MARIUSZ DANILUK and Person A controlled a residence on Belmont Avenue in Chicago ("the Belmont Location").

1

g.      Defendant MATEUSZ DZIELSKI controlled an apartment in Rosemont, Illinois ("the Rosemont Location").

## CONSPIRACY

2.      Beginning no later than 2019 and continuing through on or about May 5, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARCIN CIBOROWSKI, also known as
"Rafal Golaszewski," "Seba," and "Sebastian,"
MARIUSZ DANILUK, also known as "Karol," and
MATEUSZ DZIELSKI also known as "Mati"

defendants herein, did knowingly conspire with one another, Persons A and B, and others known and unknown to the Grand Jury, to directly and indirectly knowingly import and attempt to import into the United States and keep, maintain, control, support, employ, and harbor, for the purpose of prostitution, and for any other immoral purpose, any alien, namely Individuals A, B, and C, and other individuals known and unknown to the Grand Jury, in violation of Title 8, United States Code, Section 1328.

## SUMMARY OF THE CONSPIRACY

3.      Defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI conspired with Persons A and B, and others known and unknown to the Grand Jury, to bring women from Poland and other Eastern European countries into the United States and arrange for them to engage in commercial sex acts at locations in Chicago, Illinois, and elsewhere, for purposes of defendants' financial gain.

2

## MANNER AND MEANS OF THE CONSPIRACY

4.    It was part of the conspiracy that conspirators known and unknown to the Grand Jury, located in Poland and elsewhere, including Person B, recruited and enticed women from Poland and other Eastern European countries to come to the United States for purposes of engaging in commercial sex acts.

5.    It was further part of the conspiracy that the overseas conspirators directly and indirectly coordinated with conspirators in the United States, including defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI, regarding the arrivals and departures of women traveling to the United States for purposes of engaging in commercial sex acts.

6.    It was further part of the conspiracy that the conspirators, including defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI, reimbursed the women for some of the costs incurred in traveling to the United States.

7.    It was further part of the conspiracy that the conspirators, including defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI, controlled apartments in the Chicago area, including the Belmont Location, the Elk Grove Location, and the Rosemont Location, in order to harbor and maintain the women and to provide them with a location where they could perform commercial sex acts.

8.    It was further part of the conspiracy that the conspirators, including defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI, provided the women with supplies to facilitate the women's commercial

sex acts, including by providing the women with cellular phones to communicate with customers, and by providing supplies such as condoms.

9.     It was further part of the conspiracy that the conspirators, including defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI, used prostitution-related websites to advertise the women's prostitution activities.

10.     It was further part of the conspiracy that the conspirators, including defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI, kept records of the number of customers seen by the women and the fees the women received each day.

11.     It was further part of the conspiracy that the conspirators, including defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI, kept for their own benefit a portion of the funds paid to the women by their customers in exchange for commercial sex acts.

12.     It was further part of the conspiracy that the conspirators, including defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI, transported the women, or caused the women to be transported, to money-transfer businesses to wire proceeds of their commercial sex activities back to their home countries.

13.     It was further part of the conspiracy that the conspirators, including defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ

DZIELSKI, used home security cameras to monitor the women's activities and the comings and goings of customers.

OVERT ACTS

14.     In furtherance of the conspiracy, and to accomplish the objectives of the conspiracy, defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI committed one or more overt acts in the Northern District of Illinois and elsewhere, which overt acts included, but were not limited to, the following:

**Individual A**

a.     Between in or around January 2020 and in or around February 2020, defendants MARCIN CIBOROWSKI and MARIUSZ DANILUK kept, maintained, controlled, supported, employed, and harbored Individual A at the Elk Grove Location, knowing that she would engage in commercial sex acts there.

b.     Between in or around January 2020 and in or around February 2020, defendants MARCIN CIBOROWSKI and MARIUSZ DANILUK communicated with Individual A regarding the status of encounters Individual A had with customers who purchased commercial sex acts with Individual A.

c.     In or around January 2020, defendant MARCIN CIBOROWSKI used home-security cameras to monitor the commercial sex activities of Individual A.

d.     In or around January 2020, defendant MARCIN CIBOROWSKI used prostitution-related websites to advertise Individual A's commercial sex activities.

5

**Individual B and Individual C**

e.     Between in or around September 2019 and in or around November 2019, defendant MARCIN CIBOROWSKI kept, maintained, controlled, supported, employed, and harbored Individual B at the Elk Grove Location, knowing that she would engage in commercial sex acts there.

f.     Between in or around September 2019 and in or around November 2019, defendant MARCIN CIBOROWSKI communicated with Individual B regarding the status of encounters Individual B had with customers who purchased commercial sex acts with Individual B.

g.     Between in or around September 2019 and in or around November 2019, defendant MARCIN CIBOROWSKI provided Individual B with condoms and other supplies for use in connection with commercial sex acts arranged by Individual B.

h.     Between in or around September 2019 and in or around November 2019, and consistent with Person B's agreement with Individual B, defendant MARCIN CIBOROWSKI reimbursed Individual B for a flight reservation that she abandoned when she agreed to travel to Chicago to engage in commercial sex acts.

i.     In or around February 2020, after Individual B traveled to Chicago and returned to the Elk Grove Location, defendant MATEUSZ DZIELSKI told Individual B that she could begin working in approximately one day, after advertisements had been posted for her.

j.	In or around March 2020, after Individual C traveled on Person B's instructions to an apartment complex in Rosemont, Illinois, defendant MATEUSZ DZIELSKI met Individual C outside the apartment complex, confirmed she was the woman sent by Person B, and transported Individual C to the Elk Grove Location.

k.	In or around March 2020, defendant MATEUSZ DZIELSKI provided Individual C with a cellular phone to communicate with customers.

l.	Between in or around February 2020 and in or around April 2020, defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI kept, maintained, controlled, supported, employed, and harbored Individual B and Individual C at the Elk Grove Location, knowing that they would engage in commercial sex acts there.

m.	Between in or around February 2020 and in or around April 2020, defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI used prostitution-related websites to advertise Individual B's and Individual C's commercial sex activities.

n.	Between in or around February 2020 and in or around April 2020, defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI communicated with Individual B and Individual C regarding the status of encounters Individual B and Individual C had with customers who purchased commercial sex acts with Individual B and Individual C.

o.	Between in or around February 2020 and in or around April 2020, defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI collected or caused to

be collected cash that Individual B and Individual C had received from customers who had purchased commercial sex acts with Individual B and Individual C.

p.      In or around April 2020, defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI arranged for Individual B and Individual C to move from the Elk Grove Location to the Rosemont Location.

q.      Between in or around April 2020 and in or around May 2020, defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI kept, maintained, controlled, supported, employed, and harbored Individual B and Individual C at the Rosemont Location, knowing that they would engage in commercial sex acts there.

r.      Between in or around February 2020 and in or around April 2020, defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI provided and caused to be provided condoms and other supplies to Individual B and Individual C for use in connection with commercial sex acts arranged by Individual B and Individual C.

s.      Between in or around February 2020 and in or around April 2020, defendant MATEUSZ DZIELSKI transported Individual C to a money-transfer business so that Individual C could wire proceeds of her commercial sex activities out of the country.

t.      Between in or around March 2020 and in or around April 2020, and consistent with Person B's agreement with Individual C, defendants MARIUSZ DANILUK and MATEUSZ DZIELSKI reimbursed Individual C for the cost of her airfare to the United States.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

The SPECIAL JULY 2018 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 371, as set forth in this Indictment, defendants MARCIN CIBOROWSKI, MARIUSZ DANILUK, and MATEUSZ DZIELSKI shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained, directly and indirectly, as a result of the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      The property to be forfeited includes, but is not limited to:

a.      approximately $5,887 seized on or about May 5, 2020, from a residence located at 1475 Rebecca Drive in Hoffman Estates, Illinois;

b.      approximately $4,725 seized on or about May 5, 2020, from a residence located at 9514 Glenlake Avenue in Rosemont, Illinois; and

c.      approximately $1,224 seized on or about May 5, 2020, from a residence located at 615 Perrie Drive in Elk Grove Village, Illinois.

3.      If any of the property described above, as a result of any act or omission by a defendant cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as

provided in Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____
signed by Timothy Storino on behalf of the
UNITED STATES ATTORNEY